IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re:  FRED HOSEY, | ) | |
| | ) | Bankruptcy No. 05-11977-TOM-7 |
| Debtor. | ) | AP No. 06-00025-TOM |
| | ) | |
| TERRY HOSEY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-G-0047-S |
| | ) | |
| FRED HOSEY, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

This cause is before the court on appeal from an order entered by the Bankruptcy Court for the Northern District of Alabama in an adversary proceeding in the chapter 7 bankruptcy case of Fred Hosey. The court has jurisdiction pursuant to 28 U.S.C. § 158.

## STANDARD OF REVIEW

"In reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions de novo. The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses." In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).

**SUMMARY OF RELEVANT FACTS**

Appellant, Terry Hosey, ("plaintiff") filed an adversary proceeding complaint in the debtor's bankruptcy action alleging that certain indebtedness due him from Fred Hosey ("debtor") is not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(4). Plaintiff's complaint alleges that the debt owed by the debtor to the plaintiff is nondischargeable because is was incurred through fraud and embezzlement. Plaintiff further alleges that because he obtained a judgment for fraud in an original state court action, the doctrine of collateral estoppel applies, and the judgment and interest thereon should be held nondischargeable. After a trial on the adversary proceeding, the bankruptcy court issued a memorandum opinion declaring the indebtedness owed by the debtor to the plaintiff to be dischargeable. The plaintiff appealed[1].

---

[1] The relevant facts, as found by the bankruptcy court, are as follows:

**A. Procedural History**

According to Plaintiff's Amended Complaint, on or about June 10, 1997, Terry Hosey (hereinafter "Plaintiff") filed suit against Fred Hosey (hereinafter "Defendant" or "Debtor") in the Circuit Court [for] Jefferson County, Alabama. Allegedly, the state court complaint contained an allegation against Debtor for fraudulent misrepresentation. No copy of this complaint has been shown to this Court or offered into evidence. On June 10, 2002, a jury verdict in favor or Plaintiff and against Defendant in the total amount of $143,052.60 was entered by the Jefferson County Clerk. The jury verdict (Plaintiff's Exhibit 6) and the case action summary page reflecting entry of the jury verdict (Plaintiff's Exhibit 7) are the only documents offered or admitted from the Jefferson County state court action. Plaintiff did not offer copies of the jury instructions, special interrogatories or any other documents. Debtor filed a voluntary Chapter 7 case in the United States Bankruptcy Court for the Northern District of Alabama on October 14, 2005. This adversary proceeding was commenced by Plaintiff on January 12, 2006 to determine the dischargeability of the state court judgment against Debtor.

**B. Facts Regarding Dischargeability**

Plaintiff testified that in July or August of 1996, while employed in the roofing business, his cousin, Debtor, contacted him concerning a remodeling job (hereinafter the "Project") for Amberwood

Apartments (hereinafter the "Apartments"), located in Jefferson County, Alabama.  Plaintiff alleges that Debtor verbally assured him that it would be a joint venture between the two of them under the name Hosey Enterprises, with profits to be split 50/50.  Plaintiff further alleges that Debtor promised to open a separate bank account to track their company's profits and expenses.  This separate account would be managed by Kathy Hosey, Debtor's wife.  Plaintiff testified that he did not have a general contractor's license, but that he worked under Debtor's license and that Debtor provided workers' compensation for the employees on the Project.

In September of 1996, a written contract for the Project was entered into between Elbert "Buddy" Moore on behalf of Eastern Villa Associates, who owned the Apartments, and Fred Hosey, d/b/a H&C Contracting.  Plaintiff's attorney showed two contracts to Mr. Moore while he was on the witness stand.  Mr. Moore testified that his signature is on Plaintiff's Exhibit 1, which reflects a contract for Debtor to do roofing work on eleven buildings for $15,000.00 per building for a total of $165,000.00.  This document was signed by Debtor and Mr. Moore on September 24, 1996 before a notary public.  At the top of this document is handwritten "Fred Hosey D/B/A" before H&C Contracting.  Handwritten under Amberwood Apartments is "AKA Eastern Villa Associates, Ltd."  Also added on the last page was an additional payment requirement, "after the inspection and approval of owner."  Each of these three "pencilled in" changes to the face of the contract appear to have been initialed by the contracting parties.  Plaintiff's attorney failed to illicit [sic] any testimony from either of his witnesses about these changes or the identity of the initials that appear adjacent to each of these additions.

While Mr. Moore was on the witness stand, Plaintiff's attorney showed him another very similar contract, Plaintiff's Exhibit 2.  Mr. Moore testified that he did not sign that agreement.  This contract contains none of the handwritten terms found in Plaintiff's Exhibit 1, shows the price per building as $9,090.00 for a total of nearly $100,000.00 for the eleven buildings, and is not notarized.  The document appears to have been signed by a representative of the Apartments and H&C Contracting on September 17, 1996, seven days before Plaintiff's Exhibit 1 was executed.  Plaintiff testified that Debtor showed him Plaintiff's Exhibit 2 as the contract they were working under.

Plaintiff also testified that he drew up Plaintiff's Exhibit 4, which purports to set out the terms of the agreement between Plaintiff and Debtor (hereinafter, the "Agreement").  According to this document, the Agreement is effective October 1, 1996, not in July or August as Plaintiff originally testified.  The first paragraph of Plaintiff's Exhibit 4 references a contract entered between Debtor and the Apartments, references the total price for eleven buildings from Plaintiff's Exhibit 2 ("$100,000.00") and references the party names from Plaintiff's Exhibit 1 ("Fred Hosey and/or Fred Hosey DBA H&C Contracting").  The second paragraph provides that all outstanding bills will be paid before either Plaintiff or Debtor are paid.  Additionally, the contract provided for the additional term whereby Plaintiff was to receive $120.00 a day for his work along with his fifty percent share of any profits.  Plaintiff's Exhibit 4 also reflects that the parties agreed that upon completion of the contract, Plaintiff, as job foreman, would be paid the balance due him "as money is available upon completion."  Only then, according to Plaintiff's Exhibit 4, would the net profits be split "fifty-fifty" between the parties.

While working on the Project, Mr. Moore testified that he never knew Debtor had a business partner, but admitted that Plaintiff went on the building inspections with him before the Apartments would pay for the work.  According to Plaintiff's Exhibit 3 and Mr. Moore's testimony, the Apartments received two invoices for work done as it became due and payable:  one for payment to Debtor and another payment to H&C Contracting.  The total amount invoiced for the project totaled $286,305.38.

3

**DISCUSSION**

Despite the relatively complicated facts as found by the bankruptcy court, the key issue on this appeal is whether a state court fraud judgment is entitled to collateral estoppel effect in the bankruptcy court in an adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A). That section excludes from discharge debts obtained through fraud. In In re Bilzerian, the court recognized that "[c]ourts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud." 153 F.3d 1278, 1281 (11th Cir. 1998). This means that in order to prevail on his claim of nondischargeability under 11 U.S.C. § 523(a)(2)(A), the plaintiff must prove by a preponderance of the evidence, five elements: (1) The debtor made a representation; (2) it was knowingly false; (3) it was

---

Mr. Moore also testified that Plaintiff abandoned the Project when, he estimated, it was nearly three-quarters finished, due to a disagreement with Debtor.

On April 2, 1997, Plaintiff and Debtor entered into another agreement (hereinafter, the "Lease Agreement") providing for the reimbursement to Plaintiff for use of his own equipment. Plaintiff testified that some of the equipment was stolen and the insurance company paid $2,715.72 which, according to the agreement, was to be paid to Debtor. Plaintiff has not received this money and is claiming it as part of his damages. He further claims business expenses he personally paid totaling $16,200.00 and has yet to be reimbursed as promised by Debtor. He also is claiming $15,000.00 for the four months he worked on the job and was supposed to receive $120.00 a day. He also claims his portion of the profits, after expenses, is $102,231.43. The only payment Plaintiff alleges to have received was from Kathy Hosey for $13,000.00.

The state court jury verdict awarded damages to Plaintiff as follows: $121,232.60 for compensatory damages and $21,820.09 for punitive damages, for a total of $143,052.69. Plaintiff has added 12 percent interest to this amount, and compounded annually, as of the hearing date, the amount Plaintiff requests this Court to declare nondischargeable under 11 U.S.C. §§ 523(a)(2) and 523(a)(4) is $225,096.03.

[Memorandum Opinion and Order of the Bankruptcy Court pp. 3-6](citations to exhibits omitted)

4

made with the intent to deceive the plaintiff; (4) the plaintiff actually and justifiably relied on it; and (5) the plaintiff sustained a loss as a proximate result of its reliance.  In re Johannessen, 76 F.3d 347, 350 (11th Cir. 1996)(listing elements); In re Mercer, 246 F.3d 391, 403 (5th Cir. 2001)(same); Grogan v. Garner, 498 U.S. 279, 287, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)(holding that preponderance of the evidence is the standard of proof).

Another case, HSSM # 7 Limited Partnership v. Bilzerian (In re Bilzerian), 100 F.3d 886 (11th Cir. 1996), cert. denied, 523 U.S. 1093, 118 S.Ct. 1559, 140 L.Ed.2d 791 (1998), discussed the application of collateral estoppel in bankruptcy courts:

> Collateral estoppel prevents the relitigation of issues already litigated and determined by a valid and final judgment in another court.  It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court.  See Grogan v. Garner, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); Hoskins v. Yanks (In re Yanks), 931 F.2d 42, 43 n. 1 (11th Cir. 1991).  However, collateral estoppel only applies if the following elements are present:
>
> (1) The issue in the prior action and the issue in the bankruptcy court are identical;
>
> (2) The bankruptcy issue was actually litigated in the prior action;
>
> (3) The determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation; and
>
> (4) The burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.
>
> Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995)(citation omitted).

In re Bilzerian, 100 F.3d 892. "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 676 (11th Cir. 1993).

Under Alabama law, "[c]ollateral estoppel requires (1) an issue identical to one litigated in the prior suit; (2) that the issue has been actually litigated in the prior suit; and (3) that the resolution of that issue was necessary to the prior judgment. In addition, the parties must have been the same in both suits. Where these elements are present, the parties are barred from relitigating issues actually litigated in a prior suit." Lott v. Toomey, 477 So.2d 316, 319 (Ala. 1985). In order to determine whether collateral estoppel applies in this case, an analysis of Alabama fraud law is necessary.

Judge Benjamin Cohen's excellent discussion of Alabama fraud law in In re Bennitt[2], 348 B.R. 820 (Bkrtcy. N.D.Ala. 2006), follows:

> What constitutes "fraud" in Alabama is the extensive subject of many statutes and judicial opinions. As the discussion below demonstrates, there are different types of fraud in Alabama law with varying degrees of intent.
>
> Section 6-5-101 of the Code of Alabama provides, "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Code of Ala. 1975, § 6-5-101. Under section 6-5-101, a false representation, even if made by mistake or innocently, is

---

[2] In this case, the plaintiff appealed from Judge Cohen's order denying summary judgment to this court. This court dismissed the appeal for lack of subject matter jurisdiction as the order denying summary judgment was an interlocutory order.

6

actionable and entitles a plaintiff to compensatory damages.  Hall Motor Co. v. Furman, 285 Ala. 499, 504, 234 So.2d 37, 41 (1970).  Fraudulent intent, or an intent to deceive, is not essential to a recovery under that section.  Standard Oil Co. v. Johnson, 276 Ala. 578, 581, 165 So.2d 361, 364 (1964).  Neither is knowledge by the defendant of the falsity of his or her representations.  First Nat'l Bank of Auburn v. Dowdell, 275 Ala. 622, 626, 157 So.2d 221, 225 (1963); Barrett v. Hanks, 275 Ala. 383, 385, 155 So.2d 339, 342 (1963).

The good faith of a party in making what proves to be a misrepresentation is immaterial as to the question of whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment.  Smith v. Reynolds Metals Co., 497 So.2d 93, 95 (Ala. 1986).  Consequently, the mere assertion of that to be true which is not true, although believed to be true, when made to be relied on and which is relied on to the injury of a party misled thereby, may result in the imposition of liability for compensatory damages.  Hudson v. Moore, 239 Ala. 130, 133, 194 So. 147, 149 (1940); Hartselle Real Estate & Ins. Co. v. Atkins, 426 So.2d 451, 453 (Ala.Civ.App. 1983).

Intentional fraud, unlike innocent or mistaken fraud, may entitle the party deceived to receive punitive damages.  That is the subject of sections 6-5-103 and 6-5-104 of the Code of Alabama.

Section 6-5-103 provides:

Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action.  Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action.  In all cases of deceit, knowledge of a falsehood constitutes an essential element.  A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

Code of Ala. 1975, § 6-5-103.

And section 6-5-104 provides:

    (a)    One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

    (b)    A deceit within the meaning of this section is either:

        (1)    The suggestion as a fact of that which is not true by one who does not believe it to be true;

        (2)    The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

        (3)    The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or

        (4)    A promise made without any intention of performing it.

Code of Ala. 1975, § 6-5-104.

Read together, sections 6-5-103 and 6-5-104 define the mens rea and delineate the conduct necessary to a cause of action for a willful or intentional deception. To satisfy the mens rea requirement of the two statutes, a defendant must have: (1) purposely deceived the plaintiff with; (2) the intent to induce the plaintiff to act or alter his position. The conduct made actionable by the statutes includes: (1) intentional misrepresentations (a false statement made by someone who knows the statement to be false); (2) reckless misrepresentations (a false statement made recklessly by someone who may not know the statement to be false or someone who has no reasonable grounds for believing it to be true); (3) fraudulent concealment (non-disclosure by someone who has a duty to disclose); and (4) promissory fraud (a promise made by someone who has no intention of performing the promise).

Regardless of whether a representation was made willfully, recklessly, or mistakenly, in order to obtain a judgment based on fraud, the plaintiff must prove: (1) that the defendant made a false representation; (2) that the false representation concerned a material existing fact; (3) that the

plaintiff relied upon the false representation; and (4) that the plaintiff was damaged as a proximate result of his or her reliance upon the false representation.  George v. Associated Doctors Health & Life Ins. Co., 675 So.2d 860, 862 (Ala. 1996).  Where promissory fraud is involved, the plaintiff must prove two additional elements:  (1) that the false promise was made with a present intent to deceive and (2) that, at the time the false promise was made, the defendant intended not to perform.  Valley Properties, Inc. v. Strahan, 565 So.2d 571, 576 (Ala. 1990).

To be actionable, a misrepresentation must be one of a material fact.  Lawson v. Cagle, 504 So.2d 226, 227 (Ala. 1987).  A fact is considered "material" if it is one that is likely to induce the party to whom the representation is made to take action.  Havens v. Trawick, 564 So.2d 917, 920 (Ala. 1990).  But the misrepresentation need not have been the sole motivation for the plaintiff's entering into a contract.  It is sufficient if the misrepresentation materially contributed to the plaintiff's making the contract and was of such a character that the plaintiff would not have consummated the contract, had he or she known the falsity of the statement.  Bank of Red Bay v. King, 482 So.2d 274, 282 (Ala. 1985).

The plaintiff must show that reliance upon the misrepresentation was reasonable under the circumstances.  Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997).  Where a party has reason to doubt the truth of a representation or is informed of the truth before he acts, he has no right to act thereon.  M.J.M., Inc., v. Casualty Indem. Exch., 481 So.2d 1136, 1141 (Ala. 1985).  "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volunti non fit injuria'."  Torres v. State Farm Fire & Cas. Co., 438 So.2d 757, 759 (Ala. 1983) quoting Munroe v. Pritchett, 16 Ala. 785, 789 (1849).  If the circumstances surrounding the pronouncement of the representation would have aroused suspicion as to its validity in the mind of a reasonable person, the plaintiff cannot be said to have reasonably relied upon the representation.  Holman v. Joe Steele Realty, Inc., 485 So.2d 1142, 1144 (Ala. 1986); Cook v. Brown, 393 So.2d 1016, 1019 (Ala.Civ.App. 1981).  But absent suspicious circumstances, or patent falsity, a plaintiff has no duty to affirmatively investigate and determine for himself whether or not the defendant is telling the truth.  Shahan v. Brown, 167 Ala. 534, 52 So. 737 (1910).

Punitive damages may not be awarded if liability is imposed based upon innocent or mistaken fraud.  Therefore, while the good faith of a party

9

making a representation is immaterial to the determination of whether or not a fraud has been committed if another party has acted on the misrepresentation to his or her injury, it is material to the question of damages. Hall Motor Co. v. Furman, 285 Ala. 499, 503, 234 So.2d 37, 40 (1970).

***Punitive damages, by statute, may be awarded only, "where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantoness, or malice with regard to the plaintiff."*** Code of Ala. 1975 § 6-11-20(a). "Fraud" is defined particularly in the statute as, "An intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." Code of Ala. 1975, § 6-11-20(b)(1).

Absent from the statutory list of types of actions that will support an award of punitive damages is an action for "breach of contract." ***"A claim for breach of contract will not support an award of punitive damages."*** Nolin v. Dismukes, 554 So.2d 1019, 1020 (Ala. 1989). And the statute was not designed to create a right to punitive damages which did not otherwise exist, or to expand the right to punitive damages to actions which would not have supported such a claim, prior to the statutes' enactment. "Nothing contained in this article is to be construed as creating any claim for punitive damages which is not now present under the law of the State of Alabama." Code of Ala. 1975, § 6-11-20(a).

As the above demonstrates, a judgment can be awarded in state court for fraud where the fraud committed does not rise to the level of nondischargeability as required under the stricter bankruptcy law standard.

348 B.R. 825-828(footnotes omitted)(emphasis added)

In In re Bennitt, Judge Cohen considered whether a general state court verdict could be construed to give preclusive effect in a nondischargeability action in bankruptcy court[3]. The court reasoned:

> If the jury had indicated, in its verdict, that any portion of the damages awarded were punitive, rather than compensatory, it could be inferred that its verdict was based on the plaintiff's fraud count. ***That inference would be supported by the legal reality that the jury must have concluded that the defendant was guilty of intentional fraud, since, under Alabama law, punitive damages cannot be awarded for breach of contract, and may only be awarded for intentional fraud.***

348 B.R. at 829.(emphasis added)  The court declined to speculate as to the jury's reasoning in awarding the general verdict. Id. at 831.

In this case, the underlying state court jury verdict form clearly indicated that it found against the defendant compensatory damages in the amount of $121,232.60, and punitive damages in the amount of $21,820.09. The "legal reality" is "that the jury must have concluded that the defendant was guilty of intentional fraud. . . ." Id.  There is nothing in the record calling into question the validity of that state court verdict, and no indication that the state court judgment was appealed or set aside. As such, the

---

[3] In the instant case, the bankruptcy court in a footnote stated:

> The Court is aware of the recent opinion of a Bankruptcy Court in this district which reasoned that if a jury verdict indicated punitive damages, a court may infer "that its verdict was based on the plaintiff's fraud count" based on Alabama law. In re Bennitt, A.P. No. 05-00164, 2006 WL 2484852 at *6 (Bankr. N.D.Ala. August 28, 2006).  This Court declines to accept this view and infer fraud from a punitive damage award.

[Memorandum Opinion and Order of the Bankruptcy Court p. 12, n. 7]

11

bankruptcy court's failure to give the state court judgment preclusive effect in the adversary proceeding was a material error of law.

## CONCLUSION

Because the bankruptcy court did not give the underlying state court fraud judgment collateral estoppel effect in the adversary proceeding pursuant to 11 U.S.C. § 523(a)(2)(A), the bankruptcy court's order that the indebtedness of the debtor, Fred Hosey, to the plaintiff, Terry Hosey, is dischargeable, will be reversed.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 4 April 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.